IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| JAMES GOOCH, | ) |
| Plaintiff, | ) |
| VS. | ) No. 15-2744-JDT-cgc |
| CORRECTIONS CORPORATION OF AMERICA,[1] ET AL., | ) |
| Defendants. | ) |

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,
DENYING DEFENDANT'S MOTION FOR RULE 37 SANCTIONS AS MOOT,
CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH
AND NOTIFYING PLAINTIFF OF APPELLATE FILING FEE

James Gooch, a prisoner at the Trousdale Turner Correctional Center in Hartsville, Tennessee, filed this *pro se* action pursuant to 42 U.S.C. § 1983. (ECF No. 1.) The complaint concerns events that occurred while Gooch was previously housed at the Hardeman County Correctional Facility (HCCF) in Whiteville, Tennessee. The Court dismissed most of the complaint for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) but allowed Plaintiff to proceed on his Eighth Amendment excessive force claim against Defendant Dennis Tyus, who was a Lieutenant at the HCCF[2] during the relevant time period. (ECF No. 12 at PageID 72.)

---

[1] Corrections Corporation of America is now known as CoreCivic. *See* www.corecivic.com.

[2] The complaint identifies Defendant Tyus as a captain, (ECF No. 1 at PageID 2), a sergeant, (*id.* at PageID 3-4), and a lieutenant, (*id.* at PageID 4-6). In Tyus's Declaration, he states he was at all relevant times a lieutenant. (Tyus Decl., ECF No. 40-3 at PageID 322.)

Plaintiff filed a motion for summary judgment on October 23, 2017. (ECF No. 35.) Thereafter, Defendant filed a motion asking the Court to dismiss the case as a sanction pursuant to Federal Rule of Civil Procedure 37 because Plaintiff walked out of his deposition before opposing counsel was finished with the examination. (ECF No. 38.) On February 14, 2018, Defendant filed both a motion for summary judgment, (ECF No. 40), and a response to Plaintiff's summary judgment motion, (ECF No. 39). Plaintiff responded to Defendant's motion for summary judgment, (ECF No. 41), and the Defendant filed a reply, (ECF No. 42).

The Court has determined, for the reasons stated below, that the Defendant is entitled to summary judgment; therefore, the motion for dismissal as a sanction under Rule 37(b) is DENIED as moot.

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he burden on the moving party may be discharged by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Rule 56(c)(1) provides that "[a] party asserting that a fact cannot be or is genuinely disputed" is required to support that assertion by:

> (A)    citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers or other materials;[3] or

---

[3] "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Additionally, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)" the district court may:

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials– including the facts considered undisputed–show that the movant is entitled to it; or

(4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

> In *Celotex Corp.*, the Supreme Court explained that Rule 56:
>
> mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

477 U.S. at 322-23. However, where the party moving for summary judgment also has the burden of persuasion at trial, the initial burden on summary judgment is higher. Under those circumstances, the moving party must show "that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012) (internal quotation marks omitted).

In considering whether to grant summary judgment, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion."

3

*Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (same). However, the Court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

In support of Plaintiff's motion for summary judgment, he has submitted the purported Declaration of another HCCF inmate, Richard E. Madkins, Jr. (ECF No. 35-1.) However, because that document is not signed by Madkins it will not be considered by the Court. (*Id.* at PageID 193.) Plaintiff also relies on his answers to Defendant's First Set of Interrogatories and Requests for Production of Document, (ECF No. 35-2 at PageID 194-211), and various exhibits, (*id.* at PageID 212-235; *see also* ECF No. 41-1 at PageID 370, 372).

Defendant's motion for summary judgment is supported by his Declaration, (Tyus Decl., ECF No. 40-3), and by excerpts from Plaintiff's deposition, (Pl.'s Dep., ECF No. 40-4).

The pertinent allegations in the complaint against Defendant Tyus are as follows:

24. On November 4, 2014, Sgt. Tyus came to Plaintiff cell at count time he instructed C/O Ms. Harris to open Plaintiff cell door in which Ms. Harris open the door and Sgt. Tyus told plaintiff that Unit manager Douglas had told him strip search plaintiff and search his cell on the day she off from work.

25. Sgt. Tyus came in the cell and told Plaintiff to get nake [sic] and put his hand on the wall, plaintiff put his hand on the wall and Defendant Tyus frisk him, after Tyus frisk plaintiff he than [sic] told plaintiff to strip nake [sic] plaintiff told him no and Tyus frisk plaintiff again and he squeezed plaintiff balls cause him to be extreme pain.

26. Plaintiff told Tyus that he hurt his balls and Tyus told him to take off his clothes so he can strip search him, plaintiff took off his clothes and Tyus told him to lift up

his balls and he told Tyus that his balls was hurting and Tyus told him if he don't lift up his balls he was going to write him up for refuse direct order.

27. Plaintiff lift up his balls and Tyus than [sic] told him to bend over so he can look up plaintiff butt to see if he hiding any drugs.

28. After Tyus look up Plaintiff butt and than [sic] told him that Ms. Douglas was out to get him.

29. On November 10, 2014 the Plaintiff inform Ms. Harris that he need to see Medical because he have been sexual assaulted by Sgt. Tyus and Ms. Harris told plaintiff he have to fill out for sick call.

30. On November 11, 2014, Plaintiff seen Captain Payne and inform her that He need to go to medical because Sgt. Tyus had sexual assaulted him by squeezing his balls when he strip search him on November 10.

31. Captain Payne told plaintiff to fill out a complaint against Sgt. Tyus and she will turn it in to the internal affair Mr. Shouse.

. . . .

34. After Plaintiff had told Mr. Shouse what had happen Mr. Shouse escorted him to medical and once he got to medical he talk to nurse Ms. Gomez and he told her that his testicle was hurting and swollen.

35. Nurse Gomez exscorted [sic] Plaintiff to a back room in medical and she call nurse Ms. Meldon in the room once Ms. Meldon got in the room Nurse Gomez told plaintiff they need to see his swollen testicle.

36. Plaintiff show nurse Gomez and nurse Meldon his testicle and they both told Plaintiff that his testicle was swollen and real red, they told him they going to give him some Ibuprofen for the pain and they going to give him a Ice Pack to make the swelling go down. . . .

(ECF No. 1 at PageID 3-4.)

The Eighth Amendment prohibits cruel and unusual punishment. *See generally Wilson v. Seiter*, 501 U.S. 294 (1991). An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson*, 501 U.S. at 298; *Brooks v. Celeste*, 39 F.3d 125, 127-28 (6th Cir. 1994); *Hunt v.*

*Reynolds*, 974 F.2d 734, 735 (6th Cir. 1992). The objective component requires that the deprivation be "sufficiently serious." *Farmer*, 511 U.S. at 834; *Hudson*, 503 U.S. at 8; *Wilson*, 501 U.S. at 298. The subjective component requires that the official act with the requisite intent, that is, that he have a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 297, 302-03.

With regard to claims of excessive force by prison officials, "[t]he test for whether the use of force violates the Eighth Amendment requires a court to determine if the defendant's conduct caused the unnecessary and wanton infliction of pain." *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010) (internal quotation marks omitted). That question "ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986) (internal quotation marks omitted); *see also Hudson*, 503 U.S. at 6-7. In *Hudson*, the Supreme Court held that a significant physical injury is not required to establish the objective component of an Eighth Amendment claim. 503 U.S. at 7-9. Nevertheless, not every physical contact violates the Eighth Amendment:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. *See Johnson v. Glick*, 481 F.2d [1028,] 1033 [(2d Cir. 1973)] ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chamber, violates a prisoner's constitutional rights"). The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "'repugnant to the conscience of mankind.'" *Whitley*, 475 U.S., at 327 , 106 S. Ct., at 1088 (quoting *Estelle*, *supra*, 429 U.S., at 106, 97 S. Ct., at 292) (internal quotation marks omitted).

*Id.* at 9-10. It is clear, however, that the extent of injury is only one factor bearing on whether the use of force was necessary in a particular situation. *See Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts.

6

An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Id.* at 38.

Defendant Tyus states that during his rounds on November 10, 2014, he noticed Plaintiff "looking around suspiciously and maneuvering himself like he was hiding something" as Tyus passed his cell. (Tyus Decl. ¶ 6, ECF No. 40-3 at PageID 323.) When Tyus looked into the cell, "Plaintiff jerked his hands quickly into his coat as if he was attempting to hide contraband," so Tyus decided to frisk search Plaintiff and search his cell. (*Id.*) However, Tyus denies that he squeezed Plaintiff's testicles or touched his genitals in any way during the search. (*Id.* ¶ 11, at PageID 324.) Because Plaintiff was wearing an excessive amount of clothing, including what appeared to be long-johns, Tyus thought Plaintiff might be wearing the extra layers to conceal contraband. (*Id.* ¶¶ 14-15, at PageID 324-325.) Plaintiff, however, alleges in the complaint that Tyus squeezed his testicles maliciously with the intent to cause him harm.

Plaintiff's claim that Defendant Tyus acted with the intent to cause him harm is defeated by his own deposition testimony. In describing Tyus's actions, Plaintiff testified:

> Q. Okay. So Mr. Tyus patted you down your legs on the outside of your legs and then he went up the inside of your legs?
>
> A. Yeah, he patted me down and patted me up. If you go down, you got to come back up.
>
> Q. . . . . Did he do that?
>
> A. Yeah.
>
> Q. . . . . And then at what point do you say he squeezed your testicles?
>
> A. 'Cause when he – when he patted me down, he went up. He went back down and went to the other leg and said, "What's that right there?" and I said, "That's my" – you know the feeling. You've been tapped in the nuts before. That shit hurt –

Q. What did you say?

A. – and he squeezed and he twisted it, and I shook my leg and I said, "Let me go, man. What's wrong with you?" "What you got in your briefs?" I said, "I ain't got nothing in my briefs. I ain't got nothing on me." I said, "You don't be messing with me. I ain't got nothing, Tyus." "Yeah, you got something. You're gonna get naked." I said, "I get naked for nobody. You're tripping."

That's what I told him, "You're tripping," and then he got talking about, "Well, I'm gonna dry-cell you. You ain't gonna follow a direct order" – at first I said, no, and then he said, "Oh, so you're not gonna follow a direct order." I said, "Man, fuck it," so I took my clothes off. "Here. Here."

Q. Okay.

A. We're going through with the shit. You know what I'm saying? And then turned around and talk about "Lift your private up." I said, "My nuts are hurting. You done squeezed my nuts, man." I said, "You see, there ain't nothing in my briefs or my boxers or my shirt or that coat that I had on," . . . .

(Pl.'s Dep. 183:12 - 184:24, ECF No. 40-3 at PageID 338-339.)

Q. You think he squeezed you for seven to ten seconds?

A. I don't know if it was that long. I'd say probably about five 'cause when he grabbed it, it probably wasn't even that long. It was probably about two or three seconds 'cause I kicked quick.

. . . .

A. It might have been two or three seconds. You know what I'm saying? 'Cause when he patted me, he grabbed – at first he just grabbed me and he just twist. "What the hell's going on? Man, what the fuck you doing? I ain't got nothing on me, Tyus."

Q. So he grabbed and twisted –

A. He didn't – it didn't take a long time. It wasn't that long. It was enough for him to grab me and kick instant – put it like that.

Q. So he grabbed and twisted, and it lasted about two seconds?

A. Basically. It was enough time – as soon as he grabbed ahold of it, I made him let go.

8

> . . . .
>
> A. He squeezed my balls, man. He squeezed my shit and twisted it.
>
> Q. And he indicated to you that he thought it might be drugs?
>
> A. Yeah, talking about – he thought I had something – hiding something in my boxers. I mean, my briefs. I mean –
>
> Q. And you told him – what did you tell him?
>
> A. I told him, "I ain't got nothing on me. I ain't got nothing in my damn briefs. You're tripping."
>
> Q. What did he say?
>
> A. He said, "I'm gonna dry-cell you, or you ain't" – I said, "Man, you can't dry-cell me" and I got talking about, "Man, you ain't – why do you want me to get naked for you? I ain't got – you're tripping. You got my nuts hurting right now . . . .

(Pl.'s Dep. 186:4 - 187:25; ECF No. 40-3 at PageID 340-341.)

> A. He didn't squeeze my testicles when I was naked, if that's what you're asking.
>
> Q. That – okay.
>
> A. No, if that's what you're asking. No, he squeezed my stuff when I had all the clothes on, but he thought I had something, but it wasn't nothing but my private.
>
> Q. When he squeezed you, what did you say?
>
> A. I said, "Damn." I pulled up. "Man, what the fuck going on?"

(Pl.'s Dep. 192:6-15; ECF No. 40-3 at PageID 342.)

In responding to Defendant's motion for summary judgment, Plaintiff contradicts his own complaint and deposition testimony when he states, "The facts are undisputed that Defendant Tyus sexually assaulted Plaintiff[ ] when he used excessive force by squeezing his testicles *during a[n] unauthorized strip search* in violation of the Eighth Amendment." (ECF No. 41 at PageID 346

9

(emphasis added).) Plaintiff then argues at length that Defendant Tyus was not permitted to conduct the strip search without prior authorization by the Commissioner or his designee, citing TDOC Policy 506.06(VI)(H), which he apparently contends shows that Tyus had malicious intent. (ECF No. 41-1 at PageID 367). However, as stated, Plaintiff alleged in the complaint that Tyus squeezed his testicles during the frisk search, *not* during the strip search that followed, and his deposition testimony bears that out.[4] Therefore, even if Tyus was unauthorized to conduct a strip search, which he disputes, that fact is irrelevant. TDOC Policy 506.06(VI)(H)(2) states that "[a]ll inmates are subject to search at any time by institutional staff." (*Id.* at PageID 366; *see also* Tyus Decl. ¶ 3, ECF No. 40-3 at PageID 322.) Tyus also states that an officer who observes an inmate acting suspiciously has the discretion to search the inmate and/or his cell. (Tyus Decl. ¶ 4; ECF No. 40-3 at PageID 322.) Tyus exercised his discretion to frisk Plaintiff because Plaintiff looked as if he was trying to hide contraband when Tyus passed by his cell. (*Id.* ¶ 6, at PageID 323.) That decision to frisk Plaintiff does not raise any inference that Tyus intended to inflict harm.

Plaintiff's admission in his deposition testimony that Defendant Tyus believed he was feeling drugs or other contraband Plaintiff had concealed in his underwear is sufficient to refute the allegation that Tyus squeezed Plaintiff's testicles with malicious intent to cause him harm. Therefore, Plaintiff has not made out an Eighth Amendment claim of excessive force.

In conclusion, the Court finds the undisputed evidence in the record shows that Defendant did not violate Plaintiff's Eighth Amendment rights. There are no genuine issues of material fact

---

[4] Plaintiff's answer to Defendant's Interrogatory Number 4 also is worded in a way that appears to assert Tyus did not squeeze Plaintiff's testicles until after Plaintiff had taken off his clothes. (ECF No. 35-2 at PageID 197.) However, Plaintiff's answer to Interrogatory Number 16 again states that Tyus did not tell him to remove his clothes until after Tyus squeezed Plaintiff's testicles. (*Id.* at PageID 203.)

for trial, and Defendant is entitled to judgment as a matter of law on Plaintiff's Eighth Amendment claims. Therefore, Defendant's motion for summary judgment is GRANTED, and Plaintiff's motion for summary judgment is DENIED.

Although the cause of action is barely mentioned, Plaintiff's complaint also invokes the Court's supplemental jurisdiction to hear a state-law claim against Defendant Tyus for assault and battery. (ECF No. 1 at PageID 1, 6.) However, because the Court has now disposed of all federal claims in this case, supplemental jurisdiction over any remaining claims arising under Tennessee law is declined pursuant to 28 U.S.C. § 1367(c)(3).

Pursuant to 28 U.S.C. § 1915(a)(3), the Court must also consider whether an appeal by Plaintiff in this case would be taken in good faith. The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The test for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. *Id.* The same considerations that lead the Court to grant summary judgment also compel the conclusion that an appeal would not be taken in good faith.

Therefore, it is CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith.

The Court must also address the assessment of the $505 appellate filing fee if Plaintiff nevertheless appeals the dismissal of this case. A certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b). *See McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997), *partially overruled on other grounds by LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013). *McGore* sets out specific procedures for implementing the PLRA, 28 U.S.C. § 1915(a)-(b).

11

Therefore, the Plaintiff is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in *McGore* and § 1915(a)(2) by filing an updated *in forma pauperis* affidavit and a current, certified copy of his inmate trust account for the six months immediately preceding the filing of the notice of appeal.

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

  s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE